UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

KATHY MOCK                                                               CIVIL ACTION

VERSUS                                                                          20-594-JWD-RLB

COUCH, CONVILLE, & BLITT, LLC,
ET AL.

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on February 23, 2021.

                                                                         _____
                                                                         **RICHARD L. BOURGEOIS, JR.**
                                                                         **UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

KATHY MOCK                                             CIVIL ACTION

VERSUS                                                 20-594-JWD-RLB

COUCH, CONVILLE, & BLITT, LLC,
ET AL.

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Before the Court is Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) filed on October 9, 2020. (R. Doc. 3). The motion is opposed. (R. Doc. 6).

**I.     Background**

On September 4, 2020, Kathy Mock ("Plaintiff"), who is proceeding *pro se*, commenced this action with the filing of a Complaint, naming as defendants Couch, Conville, & Blitt, LLC ("CCB"), Paul S. Brennan, and Jeffrey M. Toepfer (collectively, "Defendants"). (R. Doc. 1, "Complaint"). Plaintiff seeks recovery under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), which prohibits abusive debt collection practices by debt collectors.

In her Complaint, Plaintiff alleges that she received a collection notice from Defendants on March 11, 2020, stating that they had been engaged by Citibank, M.A. ("Citibank") to collect a balance of $4233.58 on an account with Citibank. (Compl. ¶ 10). Plaintiff alleges that she mailed a letter on March 23, 2020 "disputing the alleged debt and demanding Defendant(s) cease and desist from any further collection activities until they validated the alleged debt." (Compl. ¶ 11). Plaintiff alleges that on April 29, 2020, she then received a letter from Defendants dated April 24, 2020, along with "a package of printed statements for the alleged account," but no "response to her demand for validation." (Compl. ¶¶ 13-14). Plaintiff alleges that she mailed a second letter on May 14, 2020 disputing the debt and requesting "validation of the alleged debt," but received "no response to her demand for validation." (Compl. ¶¶ 15-17). Finally, Plaintiff

alleges that on July 22, 2020, she received a court citation from Defendants, "even though they had not provided validation of the alleged debt," in violation of 15 U.S.C. § 1692g(b) of the FDCPA. (Compl. ¶¶ 18-21). Plaintiff did not attach any of the referenced correspondences to her Complaint.

On October 9, 2020, Defendants filed the instant Motion to Dismiss, which argues that Plaintiff has failed to state a claim because (1) Defendants provided Plaintiff with timely verification of her debt under § 1692g(b) in response to her first letter disputing the debt, and (2) Defendants had no duty to respond to Plaintiff's second letter disputing the debt. (R. Doc. 3). More specifically, Defendants argue that the information provided on their April 24, 2020 communication met the requirements of § 1692g(b) because it verified that the amount being demanded is what the creditor claims is owed by Plaintiff, and otherwise equipped Plaintiff with sufficient information to dispute the debt. (R. Doc. 3-1 at 8-9). Accordingly, Defendants argue that they had no duty to provide a second verification of the debt in response to Plaintiff's second letter. (R. Doc. 3-1 at 9-10).

Defendants attach a copy of their April 24, 2020 communication for the purposes of demonstrating that they properly verified the debt prior to initiating a court action. (*See* R. Doc. 3-2). The April 24, 2020 letter provides: CCBs internal file number; the name of the creditor (Citibank); the brand name of the debt instrument (Sears Gold Mastercard); the account holder's name (Kathy Mock); the current address on file of the account holder; the last four numbers of the account number; the current balance due ($4,233.58); the date the account was opened (August 29, 2013); and the date of the last payment made on the account (June 23, 2019). (R. Doc. 3-2 at 1-2). The attached printouts consist of account statements from December 2019 to February 2020. (R. Doc. 3-2 at 3-76).

In opposition, Plaintiff argues that the April 24, 2020 communication did not constitute a proper "validation" of the debt because it does not establish, as a matter of law, that she in fact owes the debt at issue. (R. Doc. 6 at 1).[1] Plaintiff argues that to constitute proper validation of the debt, a communication must provide the dates and nature of transactions that identifies the particular transactions and/or fees that led to the alleged debt, including all statements from the opening of the account. (R. Doc. 6 at 1-2, 18-19). Relying primarily on the Sixth Circuit's decision in *Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 758 F.3d 777 (6th Cir. 2014), Plaintiff argues that Defendants' April 24, 2020 communication failed to meet the requirements of § 1692g(b). (R. Doc. 13-19). Plaintiff also seeks leave to amend the Complaint if the Court determines that she has failed to state a claim. (R. Doc. 6 at 19).

## II.   Law and Analysis

### 1.   Legal Standards for Motion to Dismiss

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a Rule 12(b)(6) motion, a pleading's language, on its face, must demonstrate that there exists plausibility for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In determining whether it is plausible that a pleader is entitled to relief, a court does not assume the truth of conclusory statements, but rather looks for facts which support the elements of the pleader's claim. *Twombly*, 550 U.S. at 557. Factual assertions are presumed

---

[1] At no point in her Complaint or briefing does Plaintiff assert that she is not, in fact, the owner of the debt at issue. Plaintiff instead argues that Defendants failed to prove that she is the debtor.

to be true, but "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" alone are not enough to withstand a 12(b)(6) motion. *Iqbal*, 556 U.S. at 678.

*Pro se* pleadings are to be held "to less stringent standards than formal pleadings drafted by lawyers." *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also SEC v. AMX, Int'l, Inc.*, 7 F.3d 71, 75 (5th Cir. 1993) (recognizing the established rule that this court "must construe [a pro se plaintiff's] allegations and briefs more permissively"). Furthermore, in most circumstances, a court should allow a plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) (plaintiffs are generally given one chance to amend before dismissal unless "it is clear that the defects are incurable"). However, a court should deny leave to submit futile amendments that are "insufficient to state a claim." *Jamieson v Shaw*, 772 F.2d 1205, 1209 (5th Cir. 1985).

### 2. Consideration of Matters Outside the Pleadings

In general, if the court considers "matters outside the pleadings" presented in a motion to dismiss, it must treat the motion as a motion for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(d). However, the Fifth Circuit has held that documents attached to a defendant's motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim. *Causey v. Sewell Cadillac-Chevrolet, Inc.,* 394 F.3d 285, 288 (5th Cir. 2004) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000); *see Dix v. Louisiana Health Servs. & Indem. Co.*, No. 12-319, 2013 WL 5350829, at *2 (M.D. La. Sept. 23, 2013) (considering documents outside the pleadings that were attached to the defendant's motion to dismiss, referenced in the complaint, and central to the plaintiff's claims).

4

Here, it is appropriate to consider Defendant's April 24, 2020 communication as part of the pleadings without converting the instant motion to dismiss into a motion for summary judgment. The April 24, 2020 communication is attached to the motion to dismiss (R. Doc. 3-2), referenced in the Complaint, and is central to Plaintiff's claim that Defendants failed to validate her debt. *See Hubbard v. Midland Credit Mgmt.*, No. 13-112, 2013 WL 6027899 (N.D. Tex. Nov. 13, 2013) (considering verification letter attached to the debt collector's motion to dismiss).

### 3. Whether Plaintiff States a Claim Under the FDCPA

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Debt collectors who fail to comply with the FDCPA are subject to civil liability. 15 U.S.C. § 1692k. In order to prevail in a civil action brought under the FDCPA, the plaintiff must prove that: "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Sibley v. Firstcollect, Inc.*, 913 F. Supp. 469, 471 (M.D. La. 1995). A violation of the FDCPA subjects a debt collector to liability for actual damages, additional damages up to $1,000, and incurred costs and attorneys' fees. 15 U.S.C. § 1692k(a). It is clear from the statute that Congress intended the FDCPA to have a broad remedial purpose. *Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507 (5th Cir. 2017). For this reason, the FDCPA has been construed broadly and in favor of the consumer. *Id.*

There is no dispute that Plaintiff has been the object of collection activity arising from consumer debt and that Defendants are a debt collector as defined by the FDCPA. The sole issue is whether Plaintiff has stated a claim that the April 24, 2020 communication did not satisfy the

5

verification requirement of the FDCPA, and that Defendants violated 15 U.S.C. § 1692g(b) by not ceasing collection of the debt until verification of the debt was made.

Section 1692g requires a debt collector, either in its initial communication with a debtor, or within five days after its initial communication with a debtor, to advise the debtor of certain information about the debt being collected upon:

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a).[2] If the debtor disputes the debt, the debtor has thirty days to dispute the validity of the debt, and the debt collector must cease collection of the debt until verification of the debt is made. 15 U.S.C. § 1692g(b). Section 1962g(b) provides for verification of consumer debts as follows:

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, **the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.** Collection activities and communications that do not otherwise violate this subchapter may continue

---

[2] A debt collector violates the FDCPA by failing to provide the information required by § 1692g(a). *McMurray v. ProCollect, Inc.*, 687 F.3d 665, 668 (5th Cir. 2012). There is no allegation that Defendants failed to provide the required notice of debt under § 1692g(a) in their initial communication.

6

>during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

15 U.S.C. § 1692g(b) (emphasis added).

The term "verification" is not defined by the FDCPA, and the Fifth Circuit has not directly addressed the issue of what constitutes verification in § 1692g(b).[3] Accordingly, the Court must look to the statutory term's "ordinary meaning." *United States v. Santos*, 553 U.S. 507, 511 (2008); *Calogero v. Shows, Cali & Walsh, L.L.P.*, 970 F.3d 576, 582 (5th Cir. 2020). District courts in the Fifth Circuit have not found the dictionary definitions of the term "verification" particularly helpful. *See Ghanta v. Immediate Credit Recovery, Inc.*, No. 16-00573, 2017 WL 1423597, at *7 (N.D. Tex. Apr. 18, 2017) (the definition of "verification" as an "acknowledgment" or "recognition of something as being factual" sheds limited light on its meaning in the statute) (quoting Black's Law Dictionary (10th ed. 2014)); *Mack v. Progressive Fin. Servs., Inc.*, No. 13-544, 2015 WL 123742, at *3 (E.D. Tex. Jan. 8, 2015) (finding unhelpful the dictionary definition of "verification" as "the act or process of verifying or the state of being verified: the authentication of truth or accuracy by such means as facts, statements, citations, measurements, or attendant circumstances") (citing Webster's Unabridged Third New International Dictionary (1986)); *Henry v. Capital One Bank (USA), N.A.*, No. 17-2962, 2018

---

[3] In the Complaint, Plaintiff actually alleges that Defendants violated § 1692g(b) by failing to provide "validation" of the alleged debt in response to her request for validation. (Compl. ¶¶ 17-18). Both Plaintiff and Defendants conflate the terms "validation" and "verification" in their briefing. This confusion may stem from the title of 15 U.S.C. § 1692g ("validation of debts") and the debtor's right to challenge the "validity of the debt" under § 1692g(a)(3). Nevertheless, once a debtor receives a challenge to the validity of a debt, § 1692g(b) requires the debt collector to obtain "verification" of the debt, not "validation" of the debt. In other words, contrary to Plaintiff's arguments, the debt collector does not have a duty to independently determine or prove that a debt is valid as a matter of law. *See Jarzyna v. Home Properties, L.P.*, 114 F. Supp. 3d 243, 264 (E.D. Pa. 2015) ("The debt collector is not charged with auditing the creditor's records or opining on the debt's validity. In other words, the debt collector is not the judge of the merits of the creditor's claim against the debtor. Rather, the debt collector must merely forward supporting information along to the debtor, so that the debtor can better understand the alleged debt's origin and perhaps dispute it further, if warranted.").

WL 4346727, at *3 (N.D. Tex. Aug. 9, 2018) (finding dictionary definitions of verification to be unhelpful), *report and recommendation adopted*, 2018 WL 4335834 (N.D. Tex. Sept. 11, 2018). The Court agrees that the dictionary definition of "verification" provides little guidance to resolving the issue, and will turn to interpretations made by the courts.

There appears to be only one decision in this district directly addressing the issue of what constitutes "verification" under § 1962g(b). *See Ducrest v. Alco Collections, Inc.*, 931 F. Supp. 459 (M.D. La. 1996). In *Ducrest*, the court addressed whether a debt collector provided verification of a $390 debt allegedly owed to an apartment complex for various charges assessed against the plaintiff after she moved out of a leased apartment, including charges for termite damage, a pet deposit, lost keys, and cleaning. *Id*. at 461. In response to the plaintiff's dispute of the validity of the debt, the debt collector sent a copy of the lease and a "security deposit transmittal" enumerating the charges. *Id*. Finding this to be sufficient verification of the debt, the court stated that a debt creditor "may rely on representations made by its clients and [does] not have any duty to independently investigate the claims presented by its clients. [Section] 1692g(b) only requires the debt collector to obtain verification of the debt, and this verification would necessarily come from the creditor." *Id*. at 462; *see also Poulin v. The Thomas Agency*, 760 F. Supp. 2d 151, 160 (D. Me. 2011) ("[N]umerous courts have held . . . that the FDCPA does not require a debt collector to independently investigate the merit of the debt and that a debt collector can rely on its clients' representations regarding the validity of the debt.") (citing cases).

Since the *Ducrest* decision in this district, various circuit courts have addressed this issue, similarly finding the verification requirement is minimal. In *Chaudhry*, the Fourth Circuit stated that "[c]onsistent with the legislative history, verification is only intended to 'eliminate the . . . problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid.'" *Chaudhry v. Gallerizzo,* 174 F.3d 394, 406 (4th Cir. 1999) (quoting

8

S. Rep. No. 95-382, at 4 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1699) (alterations in original)). The *Chaudhry* decision held that "verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed; the debt collector is not required to keep detailed files of the alleged debt." *Chaudhry*, 174 F.3d at 406.

This minimal standard has been adopted by various circuits. *See Walton v. EOS CCA*, 885 F.3d 1024, 1028 (7th Cir. 2018) ("We thus join other circuits in holding that the statute requires 'nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed.'") (quoting *Chaudhry*, 174 F.3d at 406); *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1174 (9th Cir. 2006) ("[T]he FDCPA did not impose upon them any duty to investigate independently the claims presented.") (citing *Ducrest*, 931 F. Supp. at 462); *Dunham v. Portfolio Recovery Assocs., LLC*, 663 F.3d 997, 1004 (8th Cir. 2011) (the verification requirement is satisfied where the debtor "could sufficiently dispute the payment obligation"); *Maynard v. Cannon*, 401 F. App'x 389, 396-97 (10th Cir. 2010) (the verification requirement "is not intended to give a debtor a detailed accounting of debt to be collected").

In the primary decision relied upon by Plaintiff, the Sixth Circuit found that while other circuits "suggest that the baseline for verification is to enable the consumer to sufficiently dispute the payment obligation . . . an itemized accounting detailing the transactions in an account that have led to the debt is often the best means of accomplishing that objective." *Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 758 F.3d 777, 785 (6th Cir. 2014) (internal punctuation removed). In *Haddad*, the debt collector provided an itemized accounting when the debtor disputed a debt with respect to unpaid condominium association assessments and fees. *Id*. at 779. The plaintiff questioned the validity of a $50 carryover balance (from which

9

all subsequent late fees and fines flowed), and the debt collector's only explanation of the nature of the balance was that it was the balance on the plaintiff's account when the current creditor took over management of the condominium association. *Id*. at 785. In finding the foregoing attempt at verification insufficient, the Sixth Circuit stated the following:

> Such verification cannot be enough under the FDCPA, a statute intended to protect consumers. The verification provision must be interpreted to provide the consumer with notice of how and when the debt was originally incurred or other sufficient notice from which the consumer could sufficiently dispute the payment obligation. This information does not have to be extensive. It should provide the date and nature of the transaction that led to the debt, such as a purchase on a particular date, a missed rental payment for a specific month, a fee for a particular service provided at a specified time, or a fine for a particular offense assessed on a certain date. Such a notice requirement has the advantage of providing a clear standard that courts are accustomed to enforcing and can apply easily. Moreover, in today's world of computerized records management, it would not be a significant burden to debt collectors or creditors to provide such a record.

*Id*. The Sixth Circuit reversed the district court and granted summary judgment for the plaintiff because the debt collector failed to verify the debt under § 1962g(b). *Id*. at 785-86.

While the Court agrees with the *Haddad* decision to the extent it suggests that providing an itemized accounting is likely sufficient to meet the verification requirement, it is by no means a necessary requirement under § 1962g(b). *See Ritter v. Cohen & Slamowitz, LLP*, 118 F. Supp. 3d 497, 503 (E.D.N.Y. 2015) ("Although the *Haddad* court posited that an itemized accounting is the 'best means' of verifying a debt, the court did not hold, and there is no principled basis for concluding, that any other type of verification is violative of the FDCPA."). *Cf. Ghanta*, 2017 WL 1423597, at *7 (under either *Haddad* or *Chaudhry*, debt collector did not provide verification of debt where it iterated the creditor's belief that the plaintiff "does in fact owe the balance" but did not provide any indication of the amount of the debt, when the alleged debt accrued, or any description of the transaction resulting in the alleged debt). The Court also recognizes that unlike in the instant case, in *Haddad* the debt collector had no relation with the original creditor and no means to verify the portion of the debt that pre-dated the current creditor.

10

Having considered the foregoing, the Court concludes that Defendants' April 24, 2020 communication meets the verification requirement of § 1962g(b) and, accordingly, Plaintiff has failed to state a claim upon which relief can be granted. The April 24, 2020 communication, identified, among other things, the following: the name of the creditor; the name of the debt instrument; the account holder's name; the current address on file of the account holder; the last four numbers of the account number; the current balance due; the date the account was opened; and the date of the last payment made on the account. (R. Doc. 3-2 at 1-2). Defendants also sent one year of account statements from December 2019 to February 2020 that provide the account balance information, payments, incurred late fees and interest, and the debtor's name and home address. (R. Doc. 3-2 at 3-76). The account statements also reflect periodic payments made by the Plaintiff on the outstanding balance that is now at issue.

The foregoing communication constitutes sufficient verification "in writing that the amount being demanded is what the creditor is claiming is owed" by Plaintiff. *See Chaudhry*, 174 F.3d at 406. Although not an "itemized accounting" of the debt since the origination of the account, the information provided by Defendants is sufficient, even under *Haddad*, to permit Plaintiff to dispute the validity of her debt, if appropriate to do so. *See Ritter*, 118 F. Supp. 3d at 503-04 (granting motion to dismiss where debt collector verified debt under § 1962g(b) by providing credit card statements containing the plaintiff's name and home address and that period payments were made in partial satisfaction of the debt, even though the statements did not identify the purchases underlying the debt); *Hubbard*, 2013 WL 6027899, at *3 (granting motion to dismiss where verification letter satisfied § 1692g(b) by providing the name of the original creditor, the last four digits of the account number, and the balance due). Defendants had no duty to investigate the debt any further after obtaining verification of the debt under § 1692g(b). *See Ducrest*, 931 F. Supp. at 462. Defendants also had no duty to respond to Plaintiff's second letter

11

disputing the validity of the debt prior to initiating further collection proceedings. *See id.*; *Quintanilla v. Bureaus, Inc.*, No. 19-05161, 2019 WL 3028104, at *3 (W.D. Wash. July 11, 2019) (the FDCPA does not obligate a debt collector "to satisfy a debtor's every whim when it comes to authentication.").

Plaintiff also alleges that Defendants' actions constitute "deceptive practices." (Compl. ¶ 18). A "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § l692e; *see* 15 U.S.C. § l692e(10) (specifically prohibiting "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."). When evaluating a claim under this subsection or any other subsection of 15 U.S.C. § 1692, courts "must evaluate any potential deception in the letter under an unsophisticated or least sophisticated consumer standard." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Goswami v. Am. Collections Enter., Inc.*, 377 F.3d 488, 495 (5th Cir. 2004)) (internal quotations omitted). The Court must "assume that the plaintiff-debtor is neither shrewd nor experienced in dealing with creditors." *Id.* "At the same time we do not consider the debtor as tied to the very last rung on the intelligence or sophistication ladder." *Goswami*, 377 F.3d at 495. The purpose of this standard is to protect "all consumers, including the inexperienced, the untrained and the credulous, from deceptive debt collection practices" and to protect "debt collectors against liability for bizarre or idiosyncratic consumer interpretations of collection materials." *Kay*, 577 F.3d at 603.

While not addressed by either party in their briefing, Plaintiff arguably attempts to raise a claim under § l692e(10) in the Complaint by alleging that Defendants engaged in a "deceptive practice" by failing to validate the debt in accordance with § 1962g(b). As discussed above, Defendants did not violate the verification requirement of § 1962g(b). Plaintiff fails to raise any factual allegations in support of a finding that Defendants engaged in any deceptive practices by

12

sending a verification letter in compliance with § 1962g(b). Accordingly, Plaintiff's conclusory statement that Defendants engaged in a "deceptive practice" by failing to validate the debt fails to state a claim upon which relief can be granted.

Finally, having considered Plaintiff's allegations in the Complaint, as well as Defendants' April 24, 2020 communication, the Court concludes that any attempt at amendment to state a claim under § 1962g(b) and/or § l692e(1) would be futile, as the defects in Plaintiff's Complaint are incurable.

### III.    Conclusion

Based on the foregoing,

**IT IS RECOMMENDED** that Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) (R. Doc. 3) be **GRANTED**, and Plaintiff's claims be **DISMISSED WITH PREJUDICE.**

Signed in Baton Rouge, Louisiana, on February 23, 2021.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**